## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

September 22, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ROBERT L. WELLS,**
**Claimant Below, Petitioner**

**vs.)   No. 16-1145** (BOR Appeal No. 2051371)
                    (Claim No. 2015018773)

**KROGER LIMITED PARTNERSHIP I,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Robert L. Wells, by Patrick Maroney, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Kroger Limited Partnership I, by Sean Harter, its attorney, filed a timely response.

The issue on appeal is whether the requests for a compounding cream, physical therapy, pain management, and rehabilitation as well as a neurosurgical and orthopedic consultation, are medically related and reasonably required under the claim. The claims administrator denied the request for the compound cream on April 23, 2015. The claims administrator denied the request for an orthopedic consultation, physical therapy, a neurosurgical consultation, pain management, and rehabilitation on July 2, 2015. The Office of Judges affirmed the claims administrator's decisions on May 27, 2016. The Board of Review affirmed the Order of the Office of Judges on November 9, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Wells, a department manager for Kroger Limited Partnership I, injured his neck, shoulder, wrist, and ankle when he tripped and fell at work on December 30, 2014. The notes

1

from his initial treatment at MedExpress on the date of the injury indicated that his ankle pain started in the front and radiated up the distal lower leg. Mr. Wells's previous medical history included a total knee arthroplasty and a shoulder surgery. After examination, he underwent cervical, shoulder, and ankle x-rays. He was put in an air cast, and given medications. The assessment was ankle sprain/strain, shoulder sprain/strain, and neck sprain/strain. On January 2, 2015, Mr. Wells reported to MedExpress for a follow-up on his injury. The assessment was neck, shoulder, and ankle sprain/strains. Physical therapy and medications were prescribed.

The claims administrator held the claim compensable for a sprain/strain of the ankle on January 7, 2015. On January 14, 2015, the claims administrator held the claim compensable for a left ankle sprain/strain, a neck sprain/strain, and a left shoulder sprain/strain. A report from MedExpress on January 16, 2015, stated that physical therapy was recommended. On January 28, 2015, Mr. Wells was placed on modified duty. He was restricted to no bending/stooping, kneeling, pushing/pulling, reaching, and overhead reaching, with limited standing and walking of one to three hours per shift. It was noted that restrictions apply to the left side and he was not to overcompensate with the right side by lifting/carrying more than twenty pounds. Shortly thereafter, Mr. Wells began physical therapy.

A March 23, 2015, MRI showed diffuse degenerative change present throughout the cervical spine with disc space height loss noted. There were endplate osteophytes and mixed hard and soft disc complexes with posterior spinal ridging from C3-C7. There were global disc bulges at these levels as well. There was also resultant bilateral neuroforaminal narrowing, right worse than left, at all levels, greatest at C5-6 on the right. There was mild central canal narrowing at these levels as well. The impression was that these findings have progressed since the January 4, 2007, study. An MRI of the shoulder performed on the same day revealed mild tendinopathy of the distal supraspinatus tendon with a questionable minimal partial thickness tear of the deep surface of the distal supraspinatus tendon posteriorly at its insertion, which could also only represent some tendinopathy.

Stanley Tao, M.D., examined Mr. Wells's left shoulder on March 31, 2015. Mr. Wells reported pain in his shoulder blade which moves down into the arm, as well as pain in the back of the neck. The pain occurs with certain movements, lying on the involved side, and overhead activities. Mr. Wells had a prior surgery on the left shoulder consisting of an acromioplasty and distal clavicle excision on April 8, 2009. He attempted physical therapy, but could not continue due to pain. He has been on light duty since the injury. The assessment was rotator cuff sprain/strain/tear and contusion of shoulder region. Dr. Tao recommended steroid injections and to start utilizing a compounding cream. On April 15, 2015, the claims administrator approved a left shoulder steroid injection and physical therapy two to three times a week for four to six weeks for the left shoulder.

Walid Azzo, M.D., performed a record review and issued an opinion about whether the compound cream was medically necessary on April 23, 2015. Dr. Azzo stated that Mr. Wells has signs, symptoms, and physical examination findings consistent with impingement syndrome and a rotator cuff tear of the shoulder as substantiated by MRI findings. A report from Dr. Tao assessed rotator cuff sprain/strain/tear and impingement syndrome. Mr. Wells was given a

2

steroid injection into the left shoulder. The claims administrator denied the request for compounding cream on April 23, 2015.

On June 15, 2015, Mr. Wells underwent an independent medical evaluation performed by Syam Stoll, M.D., who noted that Mr. Wells only attended one session of physical therapy due to pain. An MRI of the cervical spine and left shoulder was performed and he received a steroid injection. It was Dr. Stoll's medical opinion that the compensable injuries resolved long ago. He said Mr. Wells's current complaints are due to pre-existing conditions. He noted that Mr. Wells had degenerative changes on the cervical imaging and has been prescribed Celebrex for his diffuse multi-joint osteoarthritis. At the time of his evaluation, there were no objective findings to support Mr. Wells's ongoing subjective complaints. Dr. Stoll stated that any ongoing current diagnoses and treatment are not related to the compensable injuries sustained on December 30, 2014, but rather are due to pre-existing degenerative conditions in his cervical spine and left shoulder. Dr. Stoll opined no further diagnostic studies are warranted. Specifically, he stated the request for an orthopedic surgery consultation is not indicated as imaging revealed no acute findings, only chronic tendinopathy as evidenced by the MRI study of March 23, 2015. Dr. Stoll opined that the request for physical therapy for the cervical spine and shoulder are not indicated for the compensable injuries as Mr. Wells is nearly seven months out from the date of injury for sprain/strain injuries, which are well outside West Virginia Code of State Rules § 85-20 (2006), guidelines. He also opined there was no indication for a neurosurgery consultation based on a review of his imaging studies noting moderate pre-existing progressive spondylosis of the cervical spine which is a natural progression of aging. Pain management and rehabilitation referrals would be for treatment of a pre-existing disease and not for the work-related injury and are outside of the West Virginia Code of State Rules § 85-20 guidelines. Dr. Stoll did not recommend any further treatment related to the compensable injury. Dr. Stoll found Mr. Wells to be at maximum medical improvement and recommended 3% whole person impairment.

On July 2, 2015, the claims administrator denied the requested orthopedic consultation, physical therapy, neurosurgical consultation, pain management, and rehabilitation. A September 1, 2015, report from Dr. Tao stated that he believes that Mr. Wells's condition is causally related to the work injury and that he had permanent work restrictions. He also believed the compounding cream should be authorized as needed to help pain. He also recommended consultations for the cervical spine. Bruce Guberman, M.D., completed an independent medical evaluation on September 2, 2015. His impression was chronic posttraumatic strains of the cervical spine, left shoulder, and left ankle. Dr. Guberman stated that Mr. Wells suffered injuries when he tripped and fell at work on the date of injury. He received conservative treatment, and symptoms have persisted. Physical examination did reveal range of motion abnormalities in the cervical spine, left shoulder, and left ankle. He found Mr. Wells to be at maximum medical improvement and no further treatment was recommended. He recommended a total 14% whole person impairment.

In an independent medical evaluation report dated December 8, 2015, Prasadarao Mukkamala, M.D., opined that Mr. Wells was at maximum medical improvement for the December 30, 2014, injury. Dr. Mukkamala opined that there was no need for the compounding cream, physical therapy, pain management, or rehabilitation. He also opined that Mr. Wells did

not need any further consultation with a neurosurgeon or orthopedist. In a report dated December 9, 2015, Dr. Tao found that Mr. Wells was at maximum medical improvement for the work-related injury and had permanent work restrictions. Mr. Wells was deposed on February 2, 2016. Mr. Wells described the mechanism of injury and discussed his current treatment. He stated that he requested physical therapy and to see a neurosurgeon. Mr. Wells reported that he still has burning and stinging in his left ankle and foot. Dr. Tao advised him that the MRI of the left shoulder showed impingement and a rotator cuff tear, and he wanted to give him an injection before any kind of surgery was done. Dr. Tao also recommended physical therapy and a compounding cream. Mr. Wells stated that Dr. Tao released him to return to work on April 23, 2015, and he returned to work full duty as he was denied any permanent light duty.

The Office of Judges found that the two claims administrator's decisions denying medical treatment were not in error because Mr. Wells had reached maximum medical improvement. The Office of Judges concluded that the claim was only held compensable for cervical, left shoulder, and left ankle sprains. In addition, the Office of Judges concluded that all the evaluators of record, including Mr. Wells's treating physician, have opined that he had reached maximum medical improvement. The Board of Review adopted the findings of the Office of Judges and affirmed its Order on November 9, 2016.

After review, we agree with the decision of the Office of Judges as affirmed by the Board of Review. The overwhelming evidence shows Mr. Wells is at maximum medical improvement for the compensable injury and further medical treatments were not medically related or reasonably required. Dr. Stoll, Dr. Mukkamala, and Dr. Guberman all believed Mr. Wells was at maximum medical improvement. Even Dr. Tao, Mr. Wells treating physician, stated in his December 9, 2015, report, that that Mr. Wells was at maximum medical improvement. Dr. Mukkamala and Dr. Stoll addressed each medical treatment and concluded that they were neither medically related nor reasonably required to treat the compensable injury. Therefore, the Board of Review did not err in affirming the Office of Judges' decision affirming the claims administrator's denial of medical treatment based upon maximum medical improvement.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  September 22, 2017**


**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II

4

Justice Robin J. Davis
Justice Margaret L. Workman
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Menis E. Ketchum